IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIZABETH A. MUELLER,<br><br>    Plaintiff,<br><br>   vs.<br><br>STATE OF HAWAII, DEPARTMENT OF<br>PUBLIC SAFETY; FREDDIE<br>CARABBACAN, in his individual<br>and official capacity as Deputy<br>Sheriff; NOLAN ESPINDA, in his<br>individual capacity and<br>official capacity as Director<br>of the Department of Public<br>Safety; DOE DEFENDANTS 1-10,<br><br>    Defendants. | CIV. NO. 17-00571 HG-WRP |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY AND NOLAN ESPINDA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 198)**

**and**

**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY'S LIABILITY FOR THE ACTIONS OF DEFENDANT FREDDIE CARABBACAN, IN HIS OFFICIAL CAPACITY (ECF No. 200)**

  Plaintiff Elizabeth Mueller has filed a Complaint against:

  (1) Defendant State of Hawaii, Department of Public Safety;

  (2) Freddie Carabbacan, in both his individual and official capacity as Deputy Sheriff; and,

  (3) Nolan Espinda, in both his individual and official capacity as Director of the Department of Public Safety.[1]

---

  [1] The Parties previously stipulated to dismiss all claims against Francis Sequeira in his individual and official capacity as Warden of Oahu Community Correctional Center. (ECF No. 106).

The Complaint arises out of an alleged sexual assault that occurred while Plaintiff was in the custody of the Department of Public Safety. The Complaint alleges that Plaintiff, a female, was an inmate on July 3, 2014, when she was transported from the Oahu Community Correctional Center to a hearing at the Circuit Court of the First Circuit. Plaintiff claims that Defendant Deputy Sheriff Freddie Carabbacan, a male employee of the Department of Public Safety, performed a search of her at the First Circuit cellblock. She claims Defendant Carabbacan performed a "strip search" that was sexually violative.

Plaintiff filed a Prison Rape Elimination Act complaint and a separate Grievance with the Department of Public Safety regarding the July 3, 2014 incident.

Plaintiff alleges that she was informed by Department of Public Safety employees and Oahu Community Correctional Center employees that she could not file a civil lawsuit until the investigation of her Prison Rape Elimination Act complaint was completed.

On July 24, 2015, Sergeant Michael Murota of the Department of Public Safety completed an investigation of Plaintiff's Prison Rape Elimination Act complaint and determined that Plaintiff's allegations of misconduct on July 3, 2014 were substantiated.

Three days later, on July 27, 2015, Defendant Nolan Espinda, the Director of the Department of Public Safety, was sent the results of the Prison Rape Elimination Act investigation.

Defendant Espinda was informed that Plaintiff's complaint was substantiated.

Plaintiff did not receive notice of the results of the investigation until on July 3, 2017, exactly three years from the date of the incident, and nearly two years after Defendant Espinda received the results of the investigation that Plaintiff's complaint was substantiated.

On October 30, 2017, less than four months after Plaintiff finally received notice that her Prison Rape Elimination Act complaint was substantiated, Plaintiff filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.

Plaintiff's Complaint alleges the following causes of action:

### Count I: Cruel and Unusual Punishment in Violation of the Eighth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

Plaintiff brings an Eighth Amendment sexual assault claim against Freddie Carabbacan in his individual capacity and his official capacity.

Plaintiff brings an Eighth Amendment sexual assault claim against the State Department of Public Safety and Nolan Espinda "through their policies, practices, acts and omissions."

### Count II: Violations Of The Hawaii State Constitution

Plaintiff brings claims against each Defendant for various violations of the Hawaii State Constitution including the rights

of individuals, equality rights, due process and equal protection, right to privacy, and cruel and unusual punishment.

### Count III: Negligence

Plaintiff brings negligence claims against each of the Defendants for failing to protect her from harm and preventing sexual abuse.  Plaintiff's claims include negligent hiring, supervision, training, and investigation.  Plaintiff brings her negligence claims against the State pursuant to the Hawaii State Tort Liability Act, Haw. Rev. Stat. § 662-2.

### Count IV: Intentional and Negligent Infliction of Emotional Distress

Plaintiff brings claims for negligent and intentional infliction of emotional distress against each of the Defendants as a result of the alleged sexual assault and the subsequent investigation into her complaint.

### Count V:  Assault and Battery

Plaintiff brings claims for assault and battery against Defendant Carabbacan.


### Defendant State of Hawaii Department of Public Safety and Nolan Espinda's Motion For Summary Judgment:

Defendants State of Hawaii Department of Public Safety and Nolan Espinda filed a joint motion for summary judgment.

4

First, the Defendants seek summary judgment on the basis that the statute of limitations for Plaintiff's claims is two years. Defendants assert that all of Plaintiff's claims are barred because her lawsuit was filed on October 30, 2017, more than two years after the date of the alleged assault on July 3, 2014.

Second, the Defendants seek summary judgment on their theory that the Eleventh Amendment provides immunity for the claims against the State and Defendant Espinda in his official capacity.

Third, the Defendants claim there is no private cause of action for damages for violations of the Hawaii State Constitution.

Fourth, Defendant Espinda claims that he is entitled to immunity or conditional privilege for any state law claims.

The Court agrees with Defendants' third argument that there is no private cause of action for damages pursuant to the Hawaii State Constitution.

The Court cannot grant summary judgment on any of the remaining arguments put forward by the Defendants.

Sovereign immunity does not apply in this case because Defendants removed the action to federal court.

As to the other arguments, there are numerous disputes of fact that prevent summary judgment on all of the remaining claims.

DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY AND

NOLAN ESPINDA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 198) is **GRANTED, IN PART, AND DENIED, IN PART.**

**Plaintiff's Motion For Partial Summary Judgment**:

Plaintiff filed a Motion for Partial Summary Judgment against the Defendant Department of Public Safety, State of Hawaii.  Plaintiff seeks summary judgment on the theory that the State Defendant is liable for the actions of Defendant Freddie Carabbacan because an entry of default was entered.

Plaintiff is incorrect.  There has been no entry of default judgment against Defendant Carabbacan.  Default judgment is a matter of discretion for the Court and no motion for entry of a default judgment has been filed.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY'S LIABILITY FOR THE ACTIONS OF DEFENDANT CARABBACAN, IN HIS OFFICIAL CAPACITY (ECF No. 200) is **DENIED.**

<u>**PROCEDURAL HISTORY**</u>

On October 30, 2017, Plaintiff filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii.  (ECF No. 1-1).

On November 22, 2017, Defendants Department of Public Safety, State of Hawaii and Nolan Espinda removed the Complaint to this Court.  (ECF No. 1).

On January 24, 2018, the Magistrate Judge issued an ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO EXTEND THE TIME TO SERVE COMPLAINT, AND TO SERVE DEFENDANT FREDDIE CARABBACAN, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS DEPUTY SHERIFF, DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII BY PUBLICATION FILED JANUARY 17, 2018.  (ECF No. 22).

On March 2, 2018, Plaintiff filed an AFFIDAVIT OF PUBLICATION.  (ECF No. 28).

On April 10, 2018, Plaintiff filed a MOTION FOR ENTRY OF DEFAULT.  (ECF No. 31).

On April 11, 2018, the Clerk's Office issued the CLERK'S ENTRY OF DEFAULT AS TO FREDDIE CARABBACAN, IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS DEPUTY SHERIFF, DEPARTMENT OF PUBLIC SAFETY, STATE OF HAWAII.  (ECF No. 32).

On June 20, 2019, the Court held a hearing on Plaintiff's Motion to Withdraw as Counsel and the Parties' Motion to Continue Trial.  (ECF No. 73).  Plaintiff's Motion to Withdraw as Counsel was denied and the Parties' Motion to Continue Trial was granted. (Id.)

On August 14, 2019, the Parties filed Motions for Summary Judgment.  (ECF Nos. 97-100).

On August 21, 2019, the Court filed a STIPULATION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT AGAINST DEFENDANT FRANCIS SEQUEIRA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS WARDEN OF THE OAHU COMMUNITY CORRECTIONAL CENTER, DEPARTMENT OF

PUBLIC SAFETY, STATE OF HAWAII WITH PREJUDICE.  (ECF No. 106).

On September 12, the Parties filed Oppositions to the Motions for Summary Judgment.  (ECF Nos. 123-127).

On October 3, 2019, the Parties filed Replies.  (ECF No. 159, 161).

On October 29, 2019, the Court issued a Minute Order denying Plaintiff's Motion to Strike and request for attorneys' fees. (ECF No. 186).

On November 5, 2019, the Court held a hearing.  (ECF No. 190).  The Parties' Motions for Summary Judgment, Oppositions, and Replies due to the completed depositions of named Defendants Freddie Carabbacan and Nolan Espinda.  (Id.)  The Court provided new deadlines for the Parties to submit Motions for Summary Judgment.  (Id.)

On November 22, 2019, Defendants State of Hawaii Department of Public Safety and Nolan Espinda filed their Motion for Summary Judgment and their Concise Statement of Facts.  (ECF Nos. 198, 199).

On the same date, Plaintiff filed her Partial Motion for Summary Judgment and Concise Statement of Facts.  (ECF Nos. 200, 202).

On December 6, 2019, Defendants State of Hawaii Department of Public Safety and Nolan Espinda filed their Opposition.  (ECF Nos. 207, 208).

On the same date Plaintiff filed her Opposition.  (ECF Nos.

205, 206).

On December 20, 2019, Defendants State of Hawaii Department of Public Safety and Nolan Espinda filed their Reply. (ECF No. 215).

On the same date, Plaintiff filed her Reply. (ECF No. 213).

On January 29, 2020, the Court held a hearing on the Parties' Motions for Summary Judgment. (ECF No. 222).

## BACKGROUND

**Undisputed Facts:**

On July 3, 2014, Plaintiff was in the custody of the Defendant State of Hawaii, Department of Public Safety ("Defendant DPS") and she was transported from Oahu Community Correctional Center to the Circuit Court of the First Circuit, State of Hawaii. (July 24, 2014 Incident Report #SD1405588, attached as Ex. D to Pla.'s Concise Statement of Facts ("CSF"), ECF No. 202-5; Plaintiff's Statement dated July 3, 2014, attached as Ex. F to Pla.'s CSF, ECF No. 202-7).

At approximately 12:06 p.m., Plaintiff had a hearing before the Circuit Court Judge. (July 3, 2014 Hearing Minutes Before Hon. Steven S. Alm, First Circuit, attached as Ex. E to Pla.'s CSF, ECF No. 202-6). The hearing lasted until 12:15 p.m., at which time the Circuit Court Judge granted Plaintiff a four-hour pass to attend to personal matters before she was required to return to the Circuit Court. (Id.) During the four-hour period,

Plaintiff visited her church and changed her clothes. (July 24, 2014 Incident Report #SD1405588, at p. 2, attached as Ex. D to Pla.'s CSF, ECF No. 202-5).

At approximately 4:10 p.m., Plaintiff returned to the Circuit Court and was escorted to the cellblock. (Id.) Defendant Deputy Sheriff Freddie Carabbacan ("Defendant Carabbacan") was on duty at the cellblock. (Carabbacan Timesheet dated July 3, 2014, attached as Ex. I to Pla.'s CSF, ECF No. 202-12). Defendant Carabbacan informed Plaintiff he was going to search her because she had been released from custody and had changed her clothes upon her return to the cellblock. (July 24, 2014 Incident Report #SD1405588, at p. 2, attached as Ex. D to Pla.'s CSF, ECF No. 202-5).

The Parties dispute the nature of the search that took place and the majority of the events that took place following the search. The Parties also dispute the communications between Plaintiff and employees of Oahu Community Correctional Center and the Department of Public Safety.

On July 24, 2014, Plaintiff filed a complaint with the Department of Public Safety against Defendant Carabbacan. (July 24, 2014 complaint, attached as Ex. E to Def.'s CSF, ECF No. 206-7).

Plaintiff filed a separate administrative grievance with the Department of Public Safety against Defendant Carabbacan on December 23, 2014. (December 23, 2014 Administrative Grievance

and Response, attached as Ex. E to Def.'s CSF, ECF No. 199-6).
Plaintiff received a response to her grievance from the
Department of Public Safety on January 16, 2015.  (Id.)

The Parties agree that the two complaints were filed but
they disagree as to the communications, scope of investigations,
and information provided to Plaintiff concerning their effect.

The Parties agree that on July 24, 2015, Sergeant Michael
Murota of the Department of Public Safety completed an Internal
Affairs investigation concerning Defendant Carabbacan and
determined that Plaintiff's allegations of misconduct against him
and the events that occurred on July 3, 2014 were substantiated.
(State of Hawaii Department of Public Safety Internal Affairs
Office Report #SDA14-012, dated July 24, 2015, attached as Ex. H
to Pla.'s CSF, ECF No. 202-9).

The Parties also agree that three years after the date of
the incident, on July 3, 2017, Plaintiff received written
notification that her July 24, 2014 Complaint had been
investigated and substantiated and that corrective action had
been taken against Defendant Carabbacan.  (PREA Mandated
Reporting Notification, signed on July 3, 2017, attached as Ex. K
to Pla.'s CSF, ECF No. 202-14).

**Disputed Facts:**

The Parties dispute the majority of the facts presented in
the Motions for Summary Judgment:

The Parties dispute the type and amount of training Defendant Carabbacan received by the Department of Public Safety.

The Parties dispute whether Defendant Carabbacan was involved in prior sexual assaults while employed with the Department of Public Safety.

The Parties dispute the specific acts that occurred during the search on July 3, 2014.

The Parties dispute the Department of Public Safety's policies regarding searches of female inmates.

The Parties dispute when and to what extent Plaintiff consulted and retained attorneys to assist her in filing civil litigation as a result of the alleged sexual abuse.

The Parties dispute whether Department of Public Safety and Oahu Community Correctional Center employees told Plaintiff that she could not file her civil lawsuit until their own internal investigation of her complaint was completed.

The Parties dispute what information was provided to Plaintiff regarding her complaints and grievances she filed with the Department of Public Safety.

The Parties dispute the involvement of Nolan Espinda in the review of Plaintiff's complaints and grievances and his role as Director of the Department of Public Safety. The Parties also dispute the extent of Defendant Espinda's involvement in providing information to Plaintiff about her complaint and the investigation results.

## STANDARDS OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence

of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).  "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.  State Farm Fire & Cas. Co. v. Martin, 872 F.2d
319, 320 (9th Cir. 1989).  Opposition evidence may consist of
declarations, admissions, evidence obtained through discovery,
and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex,
477 U.S. at 324.  The opposing party cannot, however, stand on
its pleadings or simply assert that it will be able to discredit
the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W.
Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on
mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v.
Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir.
1994).  When the nonmoving party relies only on its own
affidavits to oppose summary judgment, it cannot rely on
conclusory allegations unsupported by factual data to create an
issue of material fact.  Hansen v. U.S., 7 F.3d 137, 138 (9th
Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co.,

121 F.3d 496, 502 (9th Cir. 1997).

<u>**ANALYSIS**</u>

**I.    Statute Of Limitations**

Plaintiff brings a claim for cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

Plaintiff also brings state law tort claims of negligence, intentional and negligent infliction of emotional distress, and assault and battery.

The Parties agree that a two-year statute of limitations applies to Plaintiff's Section 1983 claim and her state law tort claims.  <u>Owens v. Okure</u>, 488 U.S. 235, 249-51 (1989) (the statute of limitations period for Section 1983 actions is a State's own personal injury statute of limitations); Haw. Rev. Stat. § 657-7 (providing for a two-year statute of limitations for personal injury).

**A.    Accrual**

**1.    State Law Claims**

The determination of the statute of limitations for Plaintiff's state law causes of action turns on Hawaii state law. Haw. Rev. Stat. § 657-7 provides for a two-year statute of limitations for damages to persons or property.  In a negligence action, the discovery rule applies, meaning the claim for relief does not accrue until the plaintiff knew or should have known of

15

defendant's negligence. <u>Kahoohanohano v. Dep't of Human Svrs.</u>, 178 P.3d 538, 591 (Haw. 2008). A plaintiff need only have factual knowledge of the elements necessary for an actionable claim. <u>Buck v. Miles</u>, 971 P.2d 717, 723 (Haw. 1999). The discovery rule is limited by the imposition of a duty to the injured party to conduct a "reasonably diligent inquiry." <u>Vidinha v. Mivaki</u>, 145 P.3d 879, 884 (Haw. App. 2006).

### 2. Federal Claims

The determination of when a federal law Section 1983 cause of action begins to accrue turns on federal law. <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). The federal common law principle also applies the discovery rule that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury. <u>Gregg v. Hawaii, Dep't of Pub. Safety</u>, 870 F.3d 883, 887 (9th Cir. 2017).

The federal discovery accrual rule requires that a plaintiff must be diligent in discovering the critical facts concerning the cause of action and that the cause of action accrues even if the full extent of the injury is not then known. <u>Id.</u> (citing <u>Wallace</u>, 549 U.S. at 391).

### 3. Disputes Of Fact Prevent Summary Judgment Based On The Statute Of Limitations

There are disputes of fact as to the timing of Plaintiff's

injuries and the cause of her injuries that prevent a ruling on
the statute of limitations, any tolling of the limitations
period, and whether plaintiff exercised reasonable diligence.

> **a.    Disputes Of Fact As To The Timing Of
> Plaintiff's Complaints And Defendants'
> Communications To Plaintiff**

It is undisputed that the alleged sexual assault took place
on July 3, 2014.  There are disputes of fact, however, as to the
events surrounding the investigation of the alleged sexual
assault as well as the actions and investigation by the
Department of Public Safety and its employees following the
incident.

There are questions concerning specific acts of purported
negligence of the Department of Public Safety and its employees
in the investigation of the incident, the decisions regarding
disciplinary action of Defendant Carabbacan, and the timing of
information that was given to Plaintiff regarding the
Department's acts and omissions.  (Deposition of Elizabeth
Mueller ("Pla. Depo.") at pp. 108-09, 143-50, 168-70, attached as
Ex. B to Pla.'s CSF in Opp., ECF No. 206-4; Errata to the
Deposition of Elizabeth Mueller, at pp. 142, 174-75, ECF No. 210;
Deposition of Freddie Carabbacan ("Carabbacan Depo.") at pp. 194-
197, 259-60, attached as Ex. U to Pla.'s CSF in Opp., ECF No.
206-23).

Plaintiff claims that she filed two separate complaints with

the Department of Public Safety regarding Defendant Carabbacan and the incident on July 3, 2014.

First, Plaintiff claims that on July 24, 2014, she filed a complaint with the Department of Public Safety against Defendant Carabbacan for the alleged assault pursuant to the Prison Rape Elimination Act.

Second, Plaintiff claims that on December 23, 2014, she filed an administrative grievance against Defendant Carabbacan to prevent further interactions with him and other staff members accused of inappropriate acts with female inmates. The December 23, 2014 complaint was filed pursuant to the prison's internal policies and the Prison Litigation Reform Act.

There are numerous disputes of fact concerning the two separate complaints and the Department of Public Safety's investigations into the complaints.

Plaintiff claims that she intended to file the Prison Rape Elimination Act complaint immediately after the incident on July 3, 2014. Plaintiff claims that employees from the Department of Public Safety prevented her from filing her complaint against Defendant Carabbacan until July 24, 2014. (Declaration of Elizabeth Mueller at ¶ 14, attached to Pla.'s CSF in Opp., ECF No. 206-2; July 24, 2014 Complaint, attached as Ex. E to Pla.'s CSF in Opp., ECF No. 206-7). Defendants dispute this fact and claim she would have been able to file the complaint on July 3, 2014.

The Parties dispute the investigation into Plaintiff's July 24, 2014 Prison Rape Elimination Act complaint and the steps required for Plaintiff to take before she could file her lawsuit. The disagreement stems from the differences in the policies related to the Prison Rape Elimination Act and the Prison Litigation Reform Act and the information provided to Plaintiff regarding the two separate inquiries.

According to the State of Hawaii, Department of Public Safety's Internal Affairs Report, an investigation immediately began following Plaintiff's complaint on July 24, 2014. (State of Hawaii Department of Public Safety Internal Affairs Office Report #SDA14-012, dated July 24, 2015, at p. 6, attached as Ex. H to Pla.'s CSF, ECF No. 202-9). There are disputes of fact as to whether this investigation was related solely to the Prison Rape Elimination Act or whether this was an internal affairs investigation related to a separate administrative procedure.

The Internal Affairs Report states that Plaintiff was interviewed by Sergeant Michael Murota of the Department of Public Safety on December 23, 2014. (Id.)

Following her interview, also on December 23, 2014, Plaintiff filed her second complaint, which was the administrative grievance with the Department of Public Safety regarding Defendant Carabbacan and other officers and their interaction with Plaintiff and other female inmates. (Administrative Grievance, attached as Ex. S to Pla.'s CSF in

Opp., ECF No. 206-21).

The Defendants classify Plaintiff's December 23, 2014 grievance against Defendant Carabbacan as being made pursuant to the Prison Litigation Reform Act. Defendants claim the original July 24, 2014 complaint is a separate procedure altogether and that the July 24, 2014 complaint filed against Defendant Carabbacan was made pursuant to the Prison Rape Elimination Act only.

Defendants claim that Plaintiff exhausted the administrative procedure when she received a response to her December 23, 2014 Prison Litigation Reform Act administrative grievance on January 16, 2015. (December 23, 2014 Administrative Grievance and Response, attached as Ex. E to Def.'s CSF, ECF No. 199-6).

The record is not clear on what information may have been conveyed to Plaintiff during her December 23, 2014 interview by Sergeant Murota. While it is undisputed that Sergeant Murota conducted an investigation, there are issues of fact as to the information provided to Plaintiff by Defendants regarding her July 24, 2014 Prison Rape Elimination Act Complaint and her need to exhaust her administrative remedies pursuant to the Prison Litigation Reform Act based on the filing of the administrative grievance on December 23, 2014.

Plaintiff claims, as follows:

I was told by ACO's and other employees of the Department of Public Safety that I could not file a lawsuit until the Prison Rape Elimination Act ("PREA") investigation was no longer pending. I was told I

couldn't retain an attorney until the investigation was
finished.  I was told that I had to wait until I got
the results of the PREA investigation before proceeding
with getting a lawyer and filing suit.

(Pla. Decl. at ¶ 16, attached to Pla.'s CSF in Opp., ECF No.
206-2).

On January 16, 2015, Plaintiff received a written response
to her December 23, 2014 administrative grievance.  (December 23,
2014 Administrative Grievance and Response, attached as Ex. E to
Def.'s CSF, ECF No. 199-6).  The Parties dispute the effect of
the response and what Plaintiff understood about the response.
Plaintiff claims that the January 16, 2015 was only final as to
her request that she no longer be transported by Defendant
Carabbacan.  Plaintiff claims that she did not believe the
January 16, 2015 response to be related to her right to sue based
on the purported sexual assault on July 3, 2014.

Plaintiff claims as follows with regards to her
administrative grievance:

As I understood it, under PREA I could make this
request to ensure that they had no contact with me when
I appeared at the First Circuit Court Cellblock.  As I
stated in the request, the investigation into my PREA
complaint for the incident that occurred on July 3,
2014 was still ongoing and this response informed me
that Deputy Sheriff Freddie Carbbacan, Deputy Sheriff
Elson Honda and Deputy Sheriff Rory Martinez would have
no contact with me during my stay at the First Circuit
Court Cellblock for my January 20, 2015 court date.  It
did not inform me of the substantiation of my PREA
complaint or that my investigation had been completed.

(Pla. Decl. at ¶ 28, attached to Pla.'s CSF in Opp., ECF No.
206-2).

21

The disputes of fact concerning the communications to Plaintiff and the credibility of the Parties prevent a ruling on the statute of limitations on summary judgment.

### b. Disputes Of Fact As To Defendant Espinda's Knowledge and Participation In The Investigation

There are additional disputes of fact as to the accrual of Plaintiff's causes of action against Defendant Espinda.  While it is undisputed that the purported sexual assault took place on July 3, 2014, there are disputes of fact as to both the timing and the involvement of Defendant Espinda as the Director of the Department of Public Safety.  (Deposition of Nolan Espinda at pp. 222-234, attached as Ex. Q to Pla.'s CSF in Opp., ECF No. 206-19; State of Hawaii Department of Public Safety Internal Affairs Office Report #SDA14-012, dated July 24, 2015, attached as Ex. H to Pla.'s CSF, ECF No. 202-9).

It is undisputed that Defendant Espinda was Director of the Department of Public Safety during a portion of the time the investigation was conducted by Sergeant Murota.  It is also undisputed that Defendant Espinda reviewed the Internal Affairs Report that substantiated Plaintiff's allegations before the results were provided to Plaintiff.  It is undisputed that Plaintiff did not receive the results of the investigation until three years had passed from the date of the alleged assault on July 3, 2014.

The disputes of fact as to Defendant Espinda's knowledge, direction, involvement, and participation in the investigation prevent the Court from granting summary judgment as to the statute of limitations.

**B.    Equitable Tolling Pursuant To Hawaii State Law**

A statute of limitations may be equitably tolled for extraordinary circumstances.  <u>Office of Hawaiian Affairs v. State</u>, 133 P.3d 767, 789 (Haw. 2006).  For extraordinary circumstances to apply, the plaintiff must demonstrate:

(1)  that she has been pursuing her rights diligently; and,

(2)  that some extraordinary circumstances stood in her way.

<u>Annan-Yartey v. Muranaka</u>, Civ. No. 16-00590 JMS-KJM, 2017 WL 1243499, *5 (D. Haw. April 3, 2017).

The Parties dispute numerous material facts that prevent the Court from assessing whether extraordinary circumstances apply. Specifically, Plaintiff claims that she was told by officials from the Department of Public Safety and Correctional Officers at the Oahu Community Correctional Center that she was unable to file any civil case concerning the alleged sexual assault until she received the final report from her Prison Rape Elimination Act complaint.  (Pla.'s Depo. at pp. 146-50. 168-70, attached as Ex. B to Pla.'s CSF in Opp., ECF No. 206-4; Pla. Decl. at ¶ 16, attached to Pla.'s CSF in Opp., ECF No. 206-2).

The Parties dispute the extent that Plaintiff pursued her

rights and whether she retained an attorney to assist her in her civil rights case.  (Pla. Decl. at ¶ 17, attached to Pla.'s CSF in Opp., ECF No. 206-2).

There is no ability to grant summary judgment on whether extraordinary circumstances toll the statute of limitations applicable in this case given the disputes of fact and the need for credibility determinations.

### C.  Equitable Tolling Pursuant To Federal Law

The federal court must give effect to a state's tolling provisions and law, including provisions regarding equitable tolling, except to the extent any of these laws conflicts with federal law.  <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004).

Federal law provides a separate basis for tolling in this case.  A prisoner's Section 1983 claims is tolled while the prisoner complies with the mandatory exhaustion requirements pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e. <u>Brown v. Valoff</u>, 422 F.3d 926, 943 (9th Cir. 2005).

As explained above, the Parties dispute material facts that govern the application of tolling of the statute of limitations pursuant to the Prison Litigation Reform Act given the numerous complaints that Plaintiff made regarding Defendant Carabbacan and the various communications that the Defendants and their employees are alleged to have made to Plaintiff.

Defendants' Motion for Summary Judgment (ECF No. 198)

pursuant to the statute of limitations is **DENIED.**

The Court will hold an evidentiary hearing to determine whether any of Plaintiff's claims are limited by the statute of limitations and whether equitable tolling applies.  See <u>Laws v. Lamarque</u>, 351 F.3d 919, 923 (9th Cir. 2003).

Defendants have the burden of proof on all affirmative defenses, including the statute of limitations.  <u>Carvalho v. Raybestos-Manhattan, Inc.</u>, 794 F.2d 454, 456 (9th Cir. 1986) (applying Hawaii state law); <u>Briggs v. Montgomery</u>, 2019 WL 2515950, *20-*21 (D. Ariz. June 18, 2019) (explaining defendants bear the burden of proof as to each element of a statute of limitations affirmative defense in a Section 1983 case).

The burden shifts to Plaintiff to establish that equitable tolling applies if Defendants establish their statute of limitations defense.  <u>Kwai Fun Wong v. Beebe</u>, 732 F.3d 1030, 1052 (9th Cir. 2013).

The evidentiary hearing will evaluate Plaintiff's claims that she was misled and/or misinformed by Department of Public Safety employees.  The evidentiary hearing will consider the communications to Plaintiff concerning the filing and exhaustion requirements for her Prison Rape Elimination Act complaint filed July 24, 2014 and her Prison Litigation Reform Act grievance filed December 23, 2014.

The evidentiary hearing will be scheduled for a date before trial commences on May 12, 2020.

## II. Eleventh Amendment Immunity Does Not Apply Because The State Removed The Case To Federal Court

The Defendants Department of Public Safety and Espinda in his official capacity claim that they are immune from liability pursuant to the Eleventh Amendment to the United States Constitution.

Defendants' claim is foreclosed by the Ninth Circuit Court of Appeals' decision in Walden v. Nevada, 945 F.3d 1088, 1094 (9th Cir. 2019). The Appellate Court held that a State defendant that removes a case to federal court waives its immunity from suit on all federal law claims in the case, including those claims that Congress failed to apply to the State through unequivocal and valid abrogation of their Eleventh Amendment immunity. Id.

Defendants' Motion for Summary Judgment (ECF No. 198) pursuant to the Eleventh Amendment is **DENIED.**

## III. There Is No Private Cause Of Action For Violations Of The Hawaii State Constitution

Plaintiff asserts several causes of action pursuant to the Hawaii State Constitution. Plaintiff's causes of action are foreclosed by the Hawaii Supreme Court's decision in Figueroa v. State, 604 P.2d 1198, 1205-06 (Haw. 1979). There is no private cause of action for damages pursuant to the Hawaii State Constitution. Annan-Yartey, Civ. No. 16-00590 JMS-KJM, 2017 WL 1243499, at *4 n.8 (collecting cases and explaining that

26

"[a]bsent clear legal authority in support of such a claim, courts that have addressed the issue have declined to infer that the Hawaii State Constitution authorizes a private right of action").

Defendants' Motion for Summary Judgment (ECF No. 198) as to Plaintiff's causes of action pursuant to the Hawaii State Constitution is **GRANTED**.

## IV. Conditional Privilege As To Defendant Espinda

Defendant Espinda seeks summary judgment on the basis that he is entitled to conditional privilege.

Under Hawaii law, non-judicial government officials acting in the performance of their public duties enjoy a "qualified or conditional privilege." Towse v. State, 647 P.2d 696, 702 (Haw. 1982). The privilege protects the official from liability for tortious acts unless the injured party demonstrates by "clear and convincing proof" that the official was motivated by "malice and not by an otherwise proper purpose." Id.

"Actual malice" for purposes of the conditional privilege is construed in its ordinary and usual sense to mean "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007) (internal quotations omitted).

Plaintiff claims that Defendant Espinda failed to take

proper remedial actions and participated in misrepresentations to Plaintiff about her ability to vindicate her rights.

Plaintiff claims that on July 28, 2015, Defendant Espinda was given notice of the Internal Investigation finding that Plaintiff's claims of assault were substantiated. (State of Hawaii Department of Public Safety Internal Affairs Office Report #SDA14-012, dated July 24, 2015, attached as Ex. H to Pla.'s CSF, ECF No. 202-9). Plaintiff claims that, at the direction and supervision of Defendant Espinda, the results of the investigation substantiating Plaintiff's claims were withheld from her. Plaintiff was not informed of the results of the investigation for nearly two more years after it was concluded. Plaintiff received notification of the substantiation on July 3, 2017, three years to the day since the alleged sexual assault.

The question of whether Defendant Espinda engaged in malicious conduct is for the trier of fact. A reasonable trier of fact may find that the alleged conduct by Defendant Espinda constituted a "reckless disregard of the law or of [Plaintiff's] legal rights." Awakuni, 165 P.3d at 1043. The Court is unable to grant summary judgment on conditional privilege given the disputes of fact in the record.

## V. Plaintiff Is Not Entitled To Partial Summary Judgment On Account Of The Entry Of Default As To Defendant Carabbacan

Federal Rule of Civil Procedure 55 provides:

> (a) **Entering a Default.** When a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise
defend, and that failure is shown by
affidavit or otherwise, the clerk must enter
the party's default.

   **(b)  Entering a Default Judgment.**

      **(1) By the Clerk**.  If the plaintiff's claim
      is for a sum certain or a sum that can be
      made certain by computation, the clerk—on the
      plaintiff's request, with an affidavit
      showing the amount due—must enter judgment
      for that amount and costs against a defendant
      who has been defaulted for not appearing and
      who is neither a minor nor an incompetent
      person.

      **(2)  By the Court**.  In all other cases, the
      party must apply to the court for a default
      judgment....

Fed. R. Civ. P. 55.

The Ninth Circuit Court of Appeals has explained that Fed.

R. Civ. P. 55 requires a "two-step process" consisting of:

   (1)  seeking a clerks' entry of default; and,

   (2)  filing a motion for the entry of default **judgment**.

   <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986)

(emphasis added).

A district court's decision to grant default judgment is

discretionary.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir.

1980).  In exercising its discretion, the Plaintiff must address

the following seven factors:

   (1)  The possibility of prejudice to the plaintiff;

   (2)  The merits of plaintiff's substantive claim;

   (3)  The sufficiency of the complaint;

   (4)  The sum of money at stake in the action;

(5)   The possibility of a dispute concerning material facts;

(6)   Whether the default was due to excusable neglect; and,

(7)   The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Plaintiff's Motion for Partial Summary Judgment is premised on the idea that the Defendant Department of Public Safety is automatically liable for the actions of Defendant Carabbacan due to the entry of default.  The entry of default and the default judgment are two separate steps.  Plaintiff has not filed a Motion for Default Judgment.  The Court has not been presented with sufficient evidence upon which it may determine whether default judgment is appropriate.

Plaintiff's Motion for Partial Summary Judgment (ECF No. 100) is **DENIED.**

**CONCLUSION**

DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY AND NOLAN ESPINDA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 198) is **GRANTED, IN PART, AND DENIED, IN PART.**

Defendants' Motion is **GRANTED** as to Plaintiff's causes of action pursuant to the Hawaii State Constitution.

The causes of action pursuant to the Hawaii State Constitution as stated in Count II of the Complaint are **DISMISSED WITH PREJUDICE.**

Defendants' Motion pursuant to the statute of limitations is

**DENIED.**

Defendants' Motion pursuant to the Eleventh Amendment is
**DENIED.**

Defendants' Motion is **DENIED** as to immunity and conditional
privilege as to Nolan Espinda.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT
TO THE STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY'S LIABILITY
FOR THE ACTIONS OF DEFENDANT CARABBACAN, IN HIS OFFICIAL CAPACITY
(ECF No. 200) is **DENIED.**

IT IS SO ORDERED.

DATED:, March 18, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Elizabeth A. Mueller v. State of Hawaii, Department of Public
Safety; Freddie Carabbacan, in his individual capacity and
official capacity as Deputy Sheriff, Department of Public Safety,
State of Hawaii; Nolan Espinda, in his individual capacity and
official capacity as Director of the Department of Public Safety,
State of Hawaii; Doe Defendants 1-10, Civ. No. 17-00571 HG-WRP;
**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS STATE
OF HAWAII, DEPARTMENT OF PUBLIC SAFETY AND NOLAN ESPINDA'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 198) and DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE STATE OF HAWAII,
DEPARTMENT OF PUBLIC SAFETY'S LIABILITY FOR THE ACTIONS OF
DEFENDANT FREDDIE CARABBACAN, IN HIS OFFICIAL CAPACITY (ECF No.
200)**
31