IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIZABETH A. MUELLER, | ) | CIVIL NO. 17-00571 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII DEPARTMENT OF | ) | |
| PUBLIC SAFETY; FREDDIE | ) | |
| CARABBACAN, in his individual | ) | |
| capacity and official capacity | ) | |
| as Deputy Sheriff; NOLAN | ) | |
| ESPINDA, in his individual and | ) | |
| official capacity as Director | ) | |
| of the Department of Public | ) | |
| Safety; DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
RE: EVIDENTIARY HEARING ON STATUTE OF LIMITATIONS AND EQUITABLE
TOLLING**

Plaintiff Elizabeth A. Mueller ("Plaintiff Mueller") alleges that on July 3, 2014, she was sexually assaulted by Deputy Sheriff Freddie Carabbacan ("Defendant Carabbacan") while in the custody of the Department of Public Safety, State of Hawaii.

On July 3, 2014, Plaintiff Mueller was in the Department of Public Safety's custody in the cellblock for the Circuit Court of the First Circuit, State of Hawaii, following a court hearing. She claims that Deputy Sheriff Carabbacan performed a strip search of her that was sexually violative.

On October 30, 2017, more than three years after the July 3, 2014 search, Plaintiff Mueller filed her Complaint in this case against: (1) the State of Hawaii Department of Public Safety,

(2) Defendant Carabbacan, (3) former Director of the Department of Public Safety Nolan Espinda, and (4) the warden of the Oahu Community Correctional Center Francis Sequeira.

The Parties stipulated to dismiss the case against Warden Sequeira.  (Stipulation for Dismissal of Plaintiff's Complaint Against Defendant Francis Sequeira, ECF No. 106).

The Complaint alleges a claim for Cruel and Unusual Punishment in violation of the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 against Defendants Carabbacan and Espinda in both their individual and official capacities and the Department of Public Safety arising from the alleged sexual assault on July 3, 2014.

The Complaint also alleges state law tort claims of negligence, intentional and negligent infliction of emotional distress, and assault and battery against the Defendants.

The Parties agree that a two-year statute of limitations applies to Plaintiff's Section 1983 Eighth Amendment claims and her state law tort claims.  Owens v. Okure, 488 U.S. 235, 249-51 (1989).

Defendants State of Hawaii Department of Public Safety and Nolan Espinda filed a Motion for Summary Judgment.  (ECF No. 198).

On March 18, 2020, the Court issued an ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY AND NOLAN ESPINDA'S MOTION FOR SUMMARY JUDGMENT.  (ECF No. 236).

In their Motion, Defendants Espinda and Department of Public Safety argued that Plaintiff Mueller's Section 1983 Eighth Amendment claims and her state law tort claims are barred by the two-year statute of limitations.  Defendants assert that the statute of limitations bars Plaintiff's claims because the alleged assault from which the case arose occurred on July 3, 2014, and Plaintiff Mueller did not file her lawsuit until October 30, 2017.

Plaintiff Mueller argued that she exercised diligence in pursuing her lawsuit and that extraordinary circumstances should equitably toll the statute of limitations.  She asserted that her October 30, 2017 Complaint is timely.

In its March 18, 2020 Order, the Court denied Defendants' Motion as to their statute of limitations defense.  The Court set an evidentiary hearing on the question of equitable tolling of the statute of limitations given the disputes of fact in the record.

On May 6 and 7, 2021, the Court conducted a two-day evidentiary hearing on Defendants' statute of limitations defense and Plaintiff's request for equitable tolling.

The Court makes the following findings of fact and conclusions of law regarding the Defendants' statute of

limitations defense and Plaintiff's request for equitable tolling.

To the extent any findings of fact are more properly characterized as conclusions of law, or any conclusions of law are more properly characterized as findings of fact, they shall be so construed.

## **FINDINGS OF FACT**

**THE PARTIES**

1.   Plaintiff Elizabeth A. Mueller is a female who was in the custody of the State of Hawaii Department of Public Safety on July 3, 2014.

2.   Defendant Department of Public Safety, State of Hawaii, is the State agency responsible for maintaining the custody and care of inmates in the State's prison and jail system and oversees the State's Sheriff Division which employs Defendant Carabbacan.  Defendant Department of Public Safety was responsible for both the transportation of Plaintiff Mueller and the investigation into her complaint of sexual assault by Defendant Carabbacan.

3.   Defendant Freddie Carabbacan is a male Deputy Sheriff with the State's Sheriff Division.  Defendant Carabbacan is employed by the State of Hawaii Department of Public Safety, and he is sued in both his individual and official capacities.

4.   Defendant Nolan Espinda is the former Director of the Department of Public Safety and is sued in both his individual

and official capacities.

**PLAINTIFF ALLEGES THAT ON JULY 3, 2014 SHE WAS SEXUALLY ASSAULTED BY DEFENDANT CARABBACAN WHILE IN THE CUSTODY OF THE DEPARTMENT OF PUBLIC SAFETY**

5.   On July 3, 2014, Plaintiff Mueller was in the custody of the State of Hawaii Department of Public Safety and was transported from the Circuit Court of the First Circuit, State of Hawaii to Oahu Community Correctional Center ("OCCC").  (May 6, 2017 Transcript ("5/6/21 Tr.") at 8:02-11).

6.   Plaintiff claims that on July 3, 2014, she was sexually assaulted by Defendant Carabbacan while in the cell block at the Circuit Court, and she was then transported to OCCC.  (Complaint, attached as Ex. A to Def.'s Notice of Removal, ECF No. 1-1).

**PLAINTIFF ATTEMPTED TO REPORT THE ALLEGED SEXUAL ASSAULT IMMEDIATELY AFTER RETURNING TO THE OAHU COMMUNITY CORRECTIONAL CENTER ON JULY 3, 2014**

7.   On July 3, 2014, Plaintiff Mueller verbally reported to staff members of the Department of Public Safety that she was sexually assaulted by Defendant Carabbacan at the Circuit Court cellblock.  (Plaintiff's Depo. at 108:6-109:17, Exhibit 1013; 5/6/21 Tr. at 57:02-07).

8.   Plaintiff told the Lieutenant in charge, Adult Correctional Officer Toucay, that she was sexually assaulted by Carabbacan.  (See 5/6/21 Tr. at 34:4-8-37:8).  Officer Toucay told Plaintiff that she "should take one for the team" and that

5

the OCCC Adult Correctional Officers "protect their own and it's not that serious." (Id.; Plaintiff's Decl. at ¶ 14, Exhibit 19).

9.   Plaintiff Mueller attempted to file a written report against Defendant Carabbacan on July 3, 2014.  Officer Toucay did not allow Plaintiff to file a written report against Defendant Carabbacan on July 3, 2014.

10.  Also on July 3, 2014, Plaintiff asked Department of Public Safety staff to file a criminal report with the Honolulu Police Department regarding the alleged sexual assault. (Plaintiff's Depo. at 108:6-109:17, Exhibit 1013; Plaintiff's Decl. ¶¶ 14, 17, Exhibit 19; 5/6/21 Tr. at 11:09-11, 51:21-25).

11.  The OCCC Adult Correctional Officers refused to contact the Honolulu Police Department and did not allow Plaintiff Mueller to report the alleged sexual assault to police on July 3, 2014.  (Plaintiff's Depo. at 108:6-109:17, Exhibit 1013; Plaintiff's Decl. at ¶¶ 14, 17, Exhibit 19; 5/6/21 Tr. at 12:13-16, 30:10-30:21, 33:25-34:16, 35:23-37:08, 51:21-52:09, 59:16-24).

12.  On July 3, 2014, Plaintiff spoke with the duty Prison Rape Elimination Act Officer at OCCC named Officer Anzai. (5/6/21 Tr. at 36:2-21).  Officer Anzai did not allow Plaintiff to file a written report against Defendant Carabbacan on July 3, 2014.  (Id.)

**ON JULY 24, 2014, PLAINTIFF FILED A WRITTEN REPORT ALLEGING SHE WAS SEXUALLY ASSAULTED BY DEFENDANT CARABBACAN**

13.  Following the alleged sexual assault on July 3, 2014, Plaintiff continued to attempt to make a written report against Defendant Carabbacan.  Department of Public Safety employees continued to deny Plaintiff Mueller the opportunity to file a written report. (Plaintiff's Decl. at ¶ 16, Exhibit 19).

14.  On July 24, 2014, Plaintiff was finally able to formally file a written report with the Department of Public Safety for the alleged sexual assault by Defendant Carabbacan on July 3, 2014.  (Plaintiff's July 24, 2014 Administrative Remedy Form, Exhibit 1006; Plaintiff's July 24, 2014 Individual Statement, Exhibit 1004; 5/6/21 Tr. at 52:07-14, 57:02-08; May 7, 2021 Hearing Transcript ("5/7/21 Tr.") at 74:06-13).

**THE DEPARTMENT OF PUBLIC SAFETY VIOLATED ITS OWN POLICIES AND PROCEDURES THAT WERE DESIGNED TO COMPLY WITH THE PRISON RAPE ELIMINATION ACT**

15.  Sergeant Maria Tom, a Prison Rape Elimination Act Trainer and an Adult Correctional Officer for the Department of Public Safety, testified that as of July 18, 2014, Department of Public Safety staff are required to fill out a form PSD 8313 if an inmate reports an incident of sexual assault.  (5/6/21 at 82:9-25).  The Department of Public Safety violated its own policies and procedures because none of its staff members completed a form PSD 8313 following Plaintiff's report of sexual assault by Defendant Carabbacan on or after July 18, 2014.

7

16.   Sergeant Tom testified that the Department of Public
Safety is required to provide inmates with an educational session
by video or classroom as to the inmate's rights pursuant to the
Prison Rape Elimination Act.  (Id. at 84:14-85:9).  Sergeant Tom
testified that the Department of Public Safety's policies and
procedures require that the Department of Public Safety maintain
electronic or written documentation of an inmate's participation
in the educational session video or classroom.  (Id. at 85:10-
86:19).  The Department of Public Safety violated its own
policies and procedures because there is no electronic or written
documentation of Plaintiff Mueller's participation in the
educational video allegedly shown to inmates at OCCC regarding
their rights pursuant to the Prison Rape Elimination Act.

17.   The policies and procedures of the Defendant Department
of Public Safety, State of Hawaii, require that complaints of
sexual assault by inmates, while in custody, be investigated
internally by the Department of Public Safety.  The investigation
is conducted as part of the Inmate Grievance Program.  The
policies and procedures of the Department of Public Safety also
require that sexual assault claims be investigated criminally by
the Honolulu Police Department.  (5/7/21 at 28:19-31:19, 58:9-
60:17).

18.   The Department of Public Safety did not refer
Plaintiff's allegations of sexual assault to the Honolulu Police
Department in violation of its own policies and procedures.  (See
DPS PREA Policy at 18, § 17.3, Exhibit 1011, which requires

8

Department of Public Safety staff to immediately refer a complaint of sexual assault by an inmate to the Honolulu Police Department; see 5/6/21 Tr. at 83:01-15).

**PLAINTIFF MUELLER WAS DILIGENT IN PURSUING HER RIGHTS BUT DEPARTMENT OF PUBLIC SAFETY EMPLOYEES TOLD PLAINTIFF MUELLER SHE COULD NOT FILE A CIVIL LAWSUIT UNTIL THE INVESTIGATION INTO HER SEXUAL ASSAULT CLAIM WAS COMPLETED**

19.  Department of Public Safety employees, including Officer Toucay and Officer Anzai, told Plaintiff Mueller on multiple occasions that she needed to wait to file a civil lawsuit until after the investigation into her sexual assault claim was completed by the Department of Public Safety.  (5/6/21 Tr. at 30:12-13, 35:23-36:07, 36:22-37:08).

20.  Plaintiff met with multiple lawyers in order to pursue her civil lawsuit as a result of the alleged July 3, 2014 incident.  (5/6/21 Tr. at 14:23-24, 21:19-22).

21.  Plaintiff Mueller did not hire an attorney prior to 2017 as she believed she was required to wait until after the Department of Public Safety completed its investigation for her to file a civil lawsuit.  (Id. at 34:15-16).

**THE DEPARTMENT OF PUBLIC SAFETY TOOK MORE THAN A YEAR TO COMPLETE ITS INVESTIGATION INTO PLAINTIFF'S SEXUAL ASSAULT COMPLAINT**

22.  Plaintiff Mueller verbally reported that she was sexually assaulted by Defendant Carabbacan on July 3, 2014, and she filed a written report regarding the alleged sexual assault

on July 24, 2014.  It was not until September 10, 2014 that the Department of Public Safety assigned Deputy Sheriff Sergeant Michael Murota to conduct an administrative investigation into Plaintiff's allegations of sexual assault by Defendant Carabbacan.  (September 10, 2014 Memorandum re: Complaint Investigation - SDA Log No. 14-012, Exhibit 6).  Sergeant Murota did not interview Plaintiff Mueller about her claims until December 2014.

23.  On July 24, 2015, more than a year after Plaintiff's alleged sexual assault on July 3, 2014, Sergeant Murota completed the Department of Public Safety's investigation.  It was one year from the date of Plaintiff's July 24, 2014 written report until the Department of Public Safety completed its internal administrative investigation into Plaintiff's allegations of sexual assault by Defendant Carabbacan.  (5/7/21 Tr. at 23:4-6, 31:4-6, 75:04-08).

24.  Pursuant to the Department of Public Safety's own policies and procedures, the Department was required to notify Plaintiff Mueller if it needed more than 90 days to complete the investigation into her sexual assault complaint and the cause for the need of additional time.  (DPS PREA Policy at 29, § 29.4, Exhibit 1011; 5/6/21 Tr. at 90:08-92:17, 5/7/21 Tr. at 8:56-10:17).  The Department of Public Safety violated its own policies and procedures by failing to notify Plaintiff Mueller of the need for an extension beyond 90 days and the reasons for the extension.

10

**THE DEPARTMENT OF PUBLIC SAFETY WITHHELD THE RESULTS OF THE JULY 24, 2015 INVESTIGATION REPORT THAT SUBSTANTIATED PLAINTIFF'S CLAIM OF SEXUAL ASSAULT AGAINST DEFENDANT CARABBACAN**

25.   On July 24, 2015, Director of the Department of Public Safety Nolan Espinda received Sergeant Murota's investigation report regarding Plaintiff Mueller's allegations of sexual assault by Defendant Carabbacan.  (See Internal Affairs Office's Investigation Report SDA14-012, Exhibit 17; 5/7/21 Tr. at 23:19-25).  The report substantiated Plaintiff's claim of sexual assault while she was in the custody of the Department of Public Safety by Defendant Carabbacan on July 3, 2014.  (Id.)

26.   Director Espinda withheld the July 24, 2015 report from Plaintiff Mueller.

27.   Sergeant Murota testified that based on his investigation he believed the Department of Public Safety was "covering up" for Defendant Carabbacan.  (5/7/21 Tr. at 33:23-34:18).

28.   The Department of Public Safety was required to provide Plaintiff Mueller with Sergeant Murota's July 24, 2015 investigation report on July 24, 2015 because Plaintiff Mueller was in the custody of the State of Hawaii Department of Public Safety on that date.  (5/7/21 Tr. at 67:15-68:07; Espinda Depo. at 132:19-133:15, 180:12-24, Exhibit 16; July 21, 2017 Letter from Marlene Mier, Clerical Supervisor for the Department of Public Safety to Elizabeth Mueller re: Ms. Mueller's Dates of Confinement, Exhibit 10; 5/6/21 Tr. at 9:18-23).

29.   The Department of Public Safety and Nolan Espinda did not inform Plaintiff Mueller of the July 24, 2015 report until July 3, 2017, in violation of its own policies and procedures. (5/7/21 Tr. at 67:15-68:07).

**DEPARTMENT OF PUBLIC SAFETY STAFF MISLEAD PLAINTIFF ABOUT THE STATUS OF ITS INVESTIGATION INTO HER SEXUAL ASSAULT COMPLAINT**

30.   For years following Plaintiff's sexual assault complaint, Plaintiff Mueller was repeatedly told by Department of Public Safety employees that she could not file a civil lawsuit until the Department's administrative investigation into the alleged sexual assault was complete and she received the results of the investigation.  (5/6/21 Tr. at 30:12-13, 32:11-15, 33:4-7, 36:22-24, 37:4-6).

31.   Plaintiff Mueller repeatedly asked Department Public Safety staff about the status of the investigation of her sexual assault claim against Defendant Carabbacan.  (Id. at 54:10-24, 122:17-124:18, 134:01-136:09).

32.   Plaintiff asked Department of Public Safety staff about the status of the investigation of her sexual assault claim a minimum of seven times on approximately the following dates:

      (1)   November 17, 2014,

      (2)   March 30, 2015,

      (3)   November 10, 2015,

      (4)   December 28, 2015,

      (5)   July 6, 2016,

(6)   March 1, 2017, and

(7)   June 28, 2017.

(5/6/21 Tr. at 54:10-24; Exhibit 10, listing dates when Plaintiff was confined at OCCC; Plaintiff's Decl. at ¶ 42, Exhibit 19).

33.  At a minimum, on four occasions between November 2015 and June 2017, Department of Public Safety staff provided false and incorrect information to Plaintiff Mueller that the investigation into her sexual assault claim was still pending when in fact the investigation was completed and substantiated on July 24, 2015.  (5/6/21 Tr. at 54:21-24).

34.  On June 28, 2017, Plaintiff Mueller was again brought into custody at OCCC and again inquired into the status of her sexual assault complaint against Defendant Carabbacan.  (Decl. of Cheyenne Evans at ¶ 10, Exhibit 1015).

35.  On June 30, 2017, Plaintiff again reported to Shannell L. Smith, Pretrial Officer at the Department's Intake Service Center, that she had been sexually assaulted on July 3, 2014, and she inquired about the status of the investigation.  (Id.)

36.  On June 30, 2017, at 10:22 a.m., Shannell Smith emailed Kimberly Ayala, another Department of Public Safety employee, to inform her that Plaintiff had reported that she was sexually assaulted "by a sheriff while at Circuit Court in 2014, and stated the incident was reported to the police."  (E-mail from Shanell Smith to Kimberly Ayala, dated June 30, 2017 at 10:22 am, Exhibit 1008).

37.   On the same date at 10:28 a.m., Kimberly Ayala sent an e-mail to Department of Public Safety employees Shelley Nobriga and Cheyenne Evans to inform them that Plaintiff Mueller had inquired about the July 3, 2014 sexual assault investigation and reported it to Shanell Smith.  (E-mail from Kimberly Ayala to Shelley Nobriga and Cheyenne Evans dated June 30, 2017 at 10:28 am, Exhibit 1008).

38.   Kimberly Ayala's e-mail stated that she had conducted a search of the facility's records and according to OCCC's Prison Rape Elimination Act records, Plaintiff Mueller had reported the incident on "7/24/2014" and it "looks like it is still under investigation."  (Id.)

39.   Later that same day on June 30, 2017, at 2:26 p.m., Cheyenne Evans sent an e-mail to the Warden of OCCC and copied the e-mail to Shelley Nobriga and Kimberly Ayala, informing them that, "This case was substantiated, can you please have the inmate notified of the outcome and forward the mandatory report form to me."  (Id.)

40.   Cheyenne Evans, who works as a Prison Rape Elimination Act auditor for the Department of Public Safety, testified that the Department of Public Safety did not maintain its sexual assault investigation records consistently.  She explained that the Department of Public Safety maintained separate logs regarding its pending investigations into sexual assault complaints.  (5/6/21 Tr. at 122:8-123:4).  Ms. Evans explained that if an inmate inquired with a staff member at the intake

14

service center regarding a Prison Rape Elimination Act investigation or with a sheriff, the inmate may receive false information that the investigation was still pending. (Id. at 122:17-124:18). Ms. Evans testified that the intake and sheriff records may not match the Department of Public Safety's central Prison Rape Elimination Act records regarding ongoing investigations into sexual assaults because the status logs were not synched and were not automatically updated when an investigation was completed but were only updated based on inquiries to certain Prison Rape Elimination Act staff members. (Id.)

41. Shelley Harrington (née Nobriga), the Department of Public Safety's Prison Rape Elimination Act Coordinator, testified that she believed Prison Rape Elimination Act staff conducted "periodic status updates" regarding the investigation into Plaintiff Mueller's sexual assault complaint but there were issues with the records regarding the investigation into Defendant Carabbacan because of an ongoing arbitration case involving his employment. (5/6/21 Tr. at 134:01-136:13).

**PLAINTIFF MUELLER WAS NOT PROVIDED THE RESULTS OF THE DEPARTMENT OF PUBLIC SAFETY'S INVESTIGATION INTO HER CLAIM OF SEXUAL ASSAULT ON JULY 3, 2014 UNTIL JULY 3, 2017**

42. On July 3, 2017, three years to the day of the alleged sexual assault, Sergeant Allen Octavio, an Adult Correctional Officer with the Department of Public Safety and the Prison Rape Elimination Act compliance manager, presented Plaintiff with the

Department's report finding written substantiation of her allegations of sexual assault against Defendant Carabbacan. (July 3, 2017 PREA Mandated Reporting Form provided to Plaintiff by Sgt. Octavio, Exhibit 1009; 5/6/21 Tr. at 55:10-56:23, 136:06-13, 139:10-18).

43.  The Department of Public Safety violated its own policies and procedures by misleading Plaintiff Mueller about the status of the investigation and withholding the results of the investigation from her for nearly two years after the investigation was completed.  (Espinda Depo. at 132:19-133:15, 180:12-24, 181:24-182:7, Exhibit 16; 5/7/21 Tr. at 67:15-68:07, 84:18-85:10;  (5/7/21 Tr. at 67:15-68:07; July 21, 2017 Letter from Marlene Mier, Clerical Supervisor for the Department of Public Safety to Elizabeth Mueller re: Ms. Mueller's Dates of Confinement, Exhibit 10; 5/6/21 Tr. at 9:21-9:23, 54:21-24).

## CONCLUSIONS OF LAW

1.  The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1441.

2.  Venue is proper in the United States District Court for the District of Hawaii.

3.  Defendants have the burden of proof on all affirmative defenses, including the statute of limitations.  Carvalho v. Raybestos-Manhattan, Inc., 794 F.2d 454, 456 (9th Cir. 1986) (applying Hawaii state law); Briggs v. Montgomery, 2019 WL 2515950, *20-*21 (D. Ariz. June 18, 2019) (explaining defendants

bear the burden of proof as to each element of a statute of limitations affirmative defense in a Section 1983 case).

4.   The burden shifts to a plaintiff to establish that equitable tolling applies if a defendant raises a statute of limitations defense.  Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013).

5.   An evidentiary hearing was conducted on May 6 and 7, 2021, to develop the record and to evaluate Defendants' statute of limitations defense and whether equitable tolling applies. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003); Jones v. Cal. Dept. of Corrs., 584 Fed. Appx. 496, 497 (9th Cir. 2014).

**THE APPLICABLE STATUTE OF LIMITATIONS FOR PLAINTIFF'S CLAIMS IS TWO YEARS**

6.   42 U.S.C. § 1983 does not contain its own statute of limitations, and actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions.  Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001) (citing Wilson v. Garcia, 471 U.S. 261, 276, (1985)).

7.   In Hawaii, the statute of limitations for personal injury actions is two years.  See Haw. Rev. Stat. § 657-7; Bird v. Dep't of Human Servs., 935 F.3d 738, 743 (9th Cir. 2019).

8.   The applicable statute of limitations for Plaintiff's federal and state law claims alleged in the Complaint is two (2) years.

17

**PLAINTIFF'S CLAIMS BEGAN TO ACCRUE ON JULY 3, 2014**

9.   The determination of when a federal law Section 1983 cause of action accrues turns on federal law.  <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).

10.   Federal common law applies the discovery rule that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury.  <u>Gregg v. Hawaii, Dep't of Pub. Safety</u>, 870 F.3d 883, 887 (9th Cir. 2017).

11.   Plaintiff was aware of the injuries forming the basis for her action and their cause on the date of the alleged sexual assault on July 3, 2014.

12.   The statute of limitations began to accrue on July 3, 2014.

**EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS APPLIES IN THIS CASE**

13.   In a federal law action, the federal court must give effect to a state's tolling provisions and laws, including provisions regarding equitable tolling, except to the extent any of these laws conflict with federal law.  <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004).

14.   Hawaii law provides that the statute of limitations may be equitably tolled for extraordinary circumstances.  <u>Office of Hawaiian Affairs v. State</u>, 133 P.3d 767, 789 (Haw. 2006).  For extraordinary circumstances to apply, the plaintiff must

demonstrate: (1) that she has been pursuing her rights diligently; and, (2) that some extraordinary circumstances stood in her way. Id.; Annan-Yartey v. Muranaka, Civ. No. 16-00590 JMS-KJM, 2017 WL 1243499, *5 (D. Haw. Apr. 3, 2017).

15.  Plaintiff Mueller diligently pursued her rights following the alleged sexual assault on July 3, 2014:

     a.   Plaintiff Mueller immediately reported the alleged sexual assault by Defendant Carabbacan to Department of Safety staff after she was returned to OCCC on July 3, 2014;

     b.   Plaintiff Mueller attempted to file a written report and to report the incident to the Honolulu Police Department on July 3, 2014;

     c.   Plaintiff Mueller filed a written complaint as soon as she was allowed to on July 24, 2014;

     d.   Plaintiff Mueller attempted to obtain counsel to bring a lawsuit while she was in and out of incarceration following the incident;

     e.   Plaintiff Mueller cooperated with the investigation and gave an interview to Department of Public Safety staff;

     f.   Plaintiff was not told about the completion of the investigation into her sexual assault claim on July 24, 2015;

     g.   Plaintiff Mueller was not told when she inquired about the status of the investigation because the

Department of Public Safety records were not maintained properly and the system was not updated after the investigation was completed on July 24, 2015;

h.   Plaintiff Mueller was not told about the results of the investigation until July 3, 2017; and,

i.   Plaintiff Mueller retained current counsel and filed her lawsuit on October 30, 2017 after receiving the substantiation of her sexual assault complaint on July 3, 2017.

16.   Extraordinary circumstances are circumstances beyond the control of the plaintiff which make it impossible to file a complaint within the statute of limitations.  See Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1004 (9th Cir. 2006).

17.   Here, extraordinary circumstances exist that toll the statute of limitations in this case.

18.   The extraordinary circumstances include government conduct that lulled a complainant into inaction.  Curtiss v. Mt. Pleasant Corr. Facility, 338 F.3d 851, 855 (8th Cir. 2003). Plaintiff Mueller was lulled into inaction by Department of Public Safety employees who failed to timely comply with Department of Public Safety policies in documenting, reporting, and investigating Plaintiff's allegations of sexual assault.

19.   Plaintiff was also lulled into inaction by Department of Public Safety employees who told her she could not file a civil lawsuit until after she received notice that the

investigation into her sexual assault claim was finished.

20. Extraordinary circumstances include providing incorrect information to a plaintiff which misled her from timely asserting her rights. Luna v. Kernan, 784 F.3d 640, 647 (9th Cir. 2015); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001). The Department of Public Safety did not maintain its sexual assault investigation records consistently. The Department of Public Safety maintained separate logs regarding its pending investigations into sexual assault complaints that resulted in misinformation being given to Plaintiff Mueller about the status of the investigation into her complaint.

21. Each time Plaintiff was incarcerated after July 24, 2015, Plaintiff inquired with the OCCC facility and intake staff about the status of the investigation into her sexual assault complaint against Defendant Carabbacan. Plaintiff was repeatedly told that the investigation was ongoing despite the fact that the investigation was completed on July 24, 2015. Plaintiff was misinformed that the investigation was not concluded, because the status logs regarding her sexual assault complaint were not updated when the investigation was completed. Plaintiff only received notice that the investigation was completed after Plaintiff inquired with Department of Public Safety employee Shanell Smith on June 30, 2017, and Ms. Smith inquired about the investigation up the chain of command.

22. Plaintiff did not receive the July 24, 2015 report until July 3, 2017. The written report substantiating

21

Plaintiff's sexual assault claim had been provided to Nolan Espinda, the former Director of the Department of Public Safety, on July 24, 2015.  Nolan Espinda withheld the report from Plaintiff Mueller until July 3, 2017.

23.  Based on the totality of the circumstances, equitably tolling of the two-year statute of limitations is warranted.  The Court finds that the statute of limitations is equitably tolled in this case from July 3, 2014, the date when her claim began to accrue, until July 3, 2017, the date when Plaintiff was provided with the results of the Department of Public Safety's report of its investigation.

24.  Plaintiff's Complaint (ECF No. 1-1), filed on October 30, 2017, is timely filed because it was filed within two (2) years of July 3, 2017.

**THE PRISON LITIGATION REFORM ACT ALSO TOLLS THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS**

25.  Federal law provides a separate and consistent basis for tolling the statute of limitations in this case.

26.  A prisoner's Section 1983 claim is tolled while the prisoner complies with the mandatory exhaustion requirements pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005); Ross v. Blake, 136 S. Ct. 1850 (2016) (the PLRA imposes a mandatory exhaustion requirement); cf. Does 8-10 v. Snyder, 945 F.3d 951, 955-56 (6th Cir. 2019).

27. Prisoners must complete the institution's own administrative review process in accordance with its applicable procedural rules in order to properly exhaust their administrative remedies pursuant to the Prison Litigation Reform Act before they may file a civil lawsuit. <u>Jones v. Bock</u>, 549 U.S. 199, 922-23 (2007) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88 (2006)).

28. The Department of Public Safety's administrative grievance process is the applicable procedure that must be completed before a plaintiff can file a civil complaint in federal court, including for claims involving sexual assault. <u>See</u> Department of Public Safety's Policy COR.12.03, COR 23.03, and ADM.08.08, which provide enhanced requirements for investigations of a sexual assault complaint.

29. Plaintiff was required to exhaust the Department of Public Safety's administrative grievance procedure before filing suit and the procedure was not exhausted until Plaintiff was provided with the July 24, 2015 report on July 3, 2017.

30. The statute of limitations for Plaintiff's Section 1983 claims is tolled from July 3, 2014 until July 3, 2017, the date upon which Plaintiff received the report that exhausted her administrative remedies.

31. Plaintiff's Complaint (ECF No. 1-1) in this case, filed on October 30, 2017, is timely filed because it was filed within two (2) years of July 3, 2017.

## DECISION AND ORDER

Based on the above Findings of Fact and Conclusions of Law, the Court hereby rules as follows:

IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiff Elizabeth A. Mueller's Complaint, filed on October 30, 2017, is timely.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 20, 2021.

Helen Gillmor
United States District Judge

Elizabeth A. Mueller v. State of Hawaii, Department of Public Safety; Freddie Carabbacan, in his individual capacity and official capacity as Deputy Sheriff, Department of Public Safety, State of Hawaii; Nolan Espinda, in his individual capacity and official capacity as Director of the Department of Public Safety, State of Hawaii; Doe Defendants 1-10; Civ. No. 17-00571 HG-WRP; **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER RE: EVIDENTIARY HEARING ON STATUTE OF LIMITATIONS AND EQUITABLE TOLLING**

24