IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELIZABETH A. MUELLER, | ) | CIVIL NO. 17-00571 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII DEPARTMENT OF | ) | |
| PUBLIC SAFETY; FREDDIE | ) | |
| CARABBACAN; NOLAN ESPINDA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING DEFENDANT STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR A NEW TRIAL UNDER RULE 59(a) AND/OR REMITTITUR AND RELIEF UNDER RULE 59(e) (ECF No. 514)**

On November 12, 2021, following a seven-day trial, the jury returned a split verdict.  The jury found in favor of Plaintiff Elizabeth Mueller against Defendant State of Hawaii Department of Public Safety and Defendant Freddie Carabbacan.  The jury returned a verdict in favor of Defendant Nolan Espinda for the claims Plaintiff brought against him.

The jury awarded damages against Defendant State of Hawaii Department of Public Safety, as follows:

(1) **Negligence** against the Department of Public Safety with general damages in the amount of **$1,000,000;**

(2) **Respondeat Superior** against the Department of Public Safety, finding that Russell Ching, the supervisor of Defendant Freddie Carabbacan, negligently retained and supervised Carabbacan because Ching knew, or reasonably should have anticipated, that Defendant Carabbacan would commit an intentional tort against Plaintiff Mueller, and Ching was in a position to take reasonable precautions against the anticipated harm against Plaintiff but failed to do so, causing her harm in the

amount of **$2,000,000;**

(3) **Negligent Infliction Of Emotional Distress** against the Department of Public Safety finding its negligent conduct caused Plaintiff serious emotional distress and a physical injury or mental illness for damages in the amount of **$2,000,000.**

The jury awarded damages against Defendant Freddie Carabbacan in the amount of $2,050,000.

On November 15, 2021, Judgment was entered.  (ECF No. 510).

On December 13, 2021, Defendant State of Hawaii Department of Public Safety filed a Motion for a New Trial Under Rule 59(a) and/or Remittitur and Relief Under Rule 59(e).  (ECF No. 514).

On January 5, 2022, Plaintiff filed her Opposition to Defendant's Motion for a New Trial.  (ECF No. 526).

On January 19, 2022, Defendant State of Hawaii Department of Public Safety filed its Reply.  (ECF No. 534).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 59 sets forth a basis to alter or amend a judgment or for the Court to order a new trial. Fed. R. Civ. P. 59(a), (e).  Rule 59 does not specify the grounds for which a new trial may be ordered, but the Ninth Circuit Court of Appeals has outlined the grounds that have been "historically recognized."  Zhang v. Am. Gem Seafoods, Inc., 399 F.3d 1020, 1035 (9th Cir. 2003); see Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).

2

The grounds on which a new trial may be granted include "claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski, 481 F.3d at 729 (citation and internal quotations omitted). A new trial may also be ordered where the verdict "is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000).

The District Court "may not grant a new trial simply because it would have arrived at a different verdict" than the verdict returned by the jury. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001).

## ANALYSIS

### I.   Fed. R. Civ. P. 59

Federal Rule of Civil Procedure 59 provides, in pertinent part:

> **(a) In General.**
>> **(1)   *Grounds for New Trial.***  The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
>>> (A)   after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court....
>
> **(e)   Motion to Alter or Amend a Judgment.**  A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

The Defendant State of Hawaii Department of Public Safety moves for a new trial or to amend the Judgment pursuant to Fed. R. Civ. P. 59(a) and 59(e).

The State argues that a new trial, or an amended Judgment, is necessary on two grounds.

<u>First</u>, the State argues the jury's verdict against it was excessive.

<u>Second</u>, the State argues that it was unable to obtain a fair trial.

The Court does not find the arguments persuasive.  Neither of the State's arguments support ordering a new trial or amending the Judgment in this case.

## II.  Defendant State Of Hawaii Challenges The Jury Verdict On The Grounds That It Was Excessive

### A.    The Court Applies Federal Law To Procedural Questions

On November 22, 2017, the State removed Plaintiff's Complaint from Hawaii State Court to the United States District Court for the District of Hawaii on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (Notice of Removal, ECF No. 1).  The Court has subject-matter jurisdiction over the proceedings based on Plaintiff's federal law claims pursuant to 28 U.S.C. § 1983.  The Court exercised supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(a).

The Federal Rules of Civil Procedure govern actions in federal court, regardless of the basis for subject-matter

jurisdiction.  Moore's Fed. Prac. § 59.03 (3d ed.).

Here, the State moves for a new trial or amended Judgment pursuant to Fed. R. Civ. P. 59(a) and (e).  Fed. R. Civ. P. 59 is a procedural rule and is applicable in all federal cases.

### B.   The Court Applies Hawaii Law To Evaluate The Substance Of Defendant's Rule 59 Motion Challenging The Jury's Damages Award

The substance of a Rule 59 challenge may require application of state law in limited instances.  A federal district court applies state law in evaluating a Fed. R. Civ. P. 59 motion when a party argues that a jury's verdict on a state law claim is excessive.  T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1530 (11th Cir. 1985) (explaining that review of the excessiveness of a jury's verdict on a state law claim is governed by the State's substantive law, but if excessiveness is found, it is federal law that determines if a new trial should be granted).

Here, the State's Rule 59 motion is based on the jury verdict's purportedly excessive damages award and the State seeks remittitur[1].

Excessiveness of a verdict on a state law claim is determined pursuant to state law.  See Gasperini v. Ctr. for

---

[1] Remittitur is defined as the process by which a court compels a plaintiff to choose between the reduction of an excessive verdict and a new trial if the court finds that a verdict was excessive and not supported by the evidence.  Moore's Fed. Prac. § 59.13[2][g] (3d ed.); see Hetzel v. Prince William Cnty., 523 U.S. 208, 211 (1998).

Humanities, 518 U.S. 415, 426-31 (1996); see also Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) (explaining that the court applies state substantive law to state law claims based on supplemental jurisdiction).

    **C.**    **The Jury's Verdict Is Supported By The Clear Weight Of The Evidence**

The Seventh Amendment to the United States Constitution guarantees that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States" except "according to the rules of the common law."  The Court must accept any reasonable interpretation of the jury's verdict.  Gallick v. Baltimore & O. R.R. Co., 372 U.S. 108, 119 (1963).

The United States Supreme Court has explained that "a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment."  Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962).  The Court may only grant a new trial if the jury's verdict was against the "great weight of the evidence, or it is quite clear the jury has reached a seriously erroneous result."  EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997).  Evaluating a jury verdict for excessiveness is a case-specific endeavor but for which there is no specific formula.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  The trial court cannot substitute its evaluations for

those of the jurors.  <u>Union Oil Co. of Cal. v. Terrible Herbst, Inc.</u>, 331 F.3d 735, 743 (9th Cir. 2003).

The State argues that it disagrees with the jury's verdict in awarding damages to Plaintiff on the basis that the verdict was excessive.

The State asserts that the verdict was excessive on three bases: (1) it was not supported by evidence; (2) it was duplicative and inconsistent; and (3) it was impermissibly punitive and based on inappropriate argument.

### 1.  **The Evidence Clearly Supports The Jury Verdict**

The evidence at trial demonstrated that the Defendant State of Hawaii Department of Public Safety knowingly allowed Defendant Deputy Sheriff Freddie Carabbacan, a male, to conduct strip searches of females in custody.  The evidence also demonstrated that the Department of Public Safety did not employ any female sheriffs at the First Circuit Court Cellblock and did not assign any female sheriffs from other locations to conduct searches at the cellblock.

There was evidence presented that when a complaint was lodged against Carabbacan for conducting a strip search on a woman in the cellblock, the Department of Public Safety removed Carabbacan from his position in the cellblock.  The Department, however, knowingly returned Carabbacan back to his position in the cellblock and allowed him to continue to conduct strip searches of females in custody.  Two days after his

reinstatement, he conducted the strip search of Plaintiff Elizabeth Mueller which the jury found caused her harm and awarded her damages.

In addition, the jury heard evidence that the Department of Public Safety attempted to prevent Plaintiff Mueller from lodging a complaint against Carabbacan and prevented her from making a police report against him.  There was a delayed, untimely investigation into Carabbacan following her complaint.

The jury also heard evidence that the Department of Public Safety kept inaccurate records of the investigation, failed to maintain proper procedures about the status of the investigation, and repeatedly provided false information to Plaintiff about the investigation.

Plaintiff Mueller testified that not only did the incident itself on July 3, 2014 cause her harm, but the State's continued negligence over a period of years resulted in additional trauma. She testified to emotional distress, anxiety, and fear based on the Department of Public Safety and its employees' actions and omissions.

### a.   Short Summary of Evidence

### Selena Kumia

On June 17, 2014, Seleena Kumia, a female, was strip searched by Deputy Sheriff Freddie Carabbacan, a male, in the cellblock at the First Circuit Court, State of Hawaii.  (Trial Transcript Day 1 at pp. 49-55, ECF No. 489).  Carabbacan was

acting as temporary sergeant of the cellblock at the time and was in charge.  (Id. at p. 72).  Kumia testified at trial that Carabbacan told her to strip.  (Id. at p. 49).  She removed her clothing except for a sports bra and a panty, and she was then searched by Carabbacan.  (Id. at pp. 51-52).  She explained the search in detail, stating that Carabbacan put his head in her crotch and felt up and around her breasts.  (Id. at pp. 51-55).  Kumia stated that officers in the cellblock watched and laughed at her.  (Id. at p. 56).

Kumia reported the incident and Deputy Sheriff Michael Murota began an investigation into the incident.  (Id. at pp. 57-60).  Kumia testified that the State never informed her of the results of her complaint or anything about the investigation conducted by Murota.  (Id. at p. 61).

Carabbacan testified at trial that he conducted many searches of females in the cellblock without a female sheriff present because he was the supervisor and felt it was appropriate.  (Id. at p. 100-03).  Carabbacan testified that his supervisor, Lieutenant Russell Ching, knew that he was conducting strip searches of females in the cellblock.  (Id. at pp. 101, 107).  Carabbacan testified that there were no female staff members assigned to the cellblock.  (Id. at p. 104).  Carabbacan testified that there were female sheriffs assigned to the Honolulu Airport and to the Oahu Community Correctional Center but that he believed it was too time consuming and inconvenient to wait for a female sheriff to come to the cellblock to conduct

a search of a female in custody.  (Id. at pp. 104-06).

Carabbacan testified that he never called to see if a female

sheriff was available to assist on searches of females in

custody.  (Id. at pp. 104-07).  Carabbacan testified there were

no security cameras in the cellblock and no searches that he

conducted of females in custody were recorded.  (Id. at p. 112).

Carabbacan testified that Lietenant Ching was angry with him

after Ching received the complaint made by Kumia against

Carabbacan.  (Id. at pp. 123-24).  Carabbacan testified that on

June 19, 2014, he was removed from duty two days after Kumia

reported the incident.  (Id. at p. 125).  Carabbacan stated that

he was prohibited from any contact with females in custody at

that time.  (Id.)  Carabbacan testified that he believed Ching

was wrong and was not up to speed with proper training and

procedures.  (Id. at p. 127).

Carabbacan testified that less than two weeks later, on July

1, 2014, he was placed back on duty by Ching and that Carabbacan

was again allowed by the Department of Public Safety to conduct

searches of females in custody.  (Id. at pp. 129-30).


**Elizabeth Mueller**

On July 3, 2014, two days after Carabbacan was placed back

on duty, he conducted a strip search of Plaintiff Mueller in the

cellblock.  (Id. at pp. 130-31).  Plaintiff Muller cried

throughout her time on the stand recounting the incident.

Plaintiff explained that during the incident she felt that the

strip search conducted by Carabbacan was wrong, and that it made her feel distraught, upset, scared, and helpless.  (Trial Transcript of Day 2 at pp. 71-78, ECF No. 545).

Plaintiff testified at length about the incident, describing that she could feel Carabbacan "touch literally my breasts and he went all the way around the back of my bra to very the back.  So he went around, lifted, pulled around with his fingers and came around to the back part...He, like, lifted and shook [my breasts]."  (Id. at p. 74).  She detailed her testimony about the invasive nature of the search including Carabbacan placing his face in her crotch, touching her up and down her bare legs and thighs, and explaining that he was standing from behind to conduct the search of her breasts with her legs ordered to be spread open.  (Id. at pp. 73-77).

Plaintiff explained that other inmates and staff were watching during the strip search, and she could hear three male sheriffs in the control room laughing during the strip search. (Id. at p. 77).

**After The Mueller Strip Search**

Following the July 3, 2014 search, Plaintiff Mueller testified that staff from the Department of Public Safety prevented her from filing either a police report or an internal complaint of the strip search and that she was specifically told by a male Department of Public Safety employee not to complain but to "take one for the team."  (Id. at p. 78).

11

The jury heard evidence that on July 24, 2014, Plaintiff was finally able to file a written complaint of the July 3, 2014 strip search conducted by Carabbacan.  (Id. at pp. 78-79).

Sergeant Murota testified that he completed the investigation into Plaintiff's complaint exactly a year later on July 24, 2014.  Evidence showed that Plaintiff was not told about the completion of the investigation at that time.  Plaintiff testified that she repeatedly inquired about the status of the investigation over a period of years and was consistently told on numerous occasions that the investigation was ongoing, despite the fact that the investigation was completed on July 24, 2015.  (Id. at p. 84).

The jury heard evidence that the Department of Public Safety's status logs regarding Plaintiff Mueller's complaint were not updated when the investigation was completed.  The evidence revealed that Plaintiff did not receive notice that the investigation was completed until nearly three years after the July 3, 2014 strip search.  (Id. at p. 87).  On June 30, 2017, Plaintiff inquired with Department of Public Safety employee Shanell Smith about the status of the investigation, and Ms. Smith inquired about the investigation up the chain of command. She discovered that the investigation had actually concluded nearly two years earlier on July 24, 2015.  (Trial Exhibit 39).

Plaintiff testified that she considered the strip search to be a sexual assault.  (Trial Transcript of Day 2 at p. 77, ECF No. 545).  She testified that the strip search itself caused her

harm, fear, and emotional distress.  (Id. at p. 82).  In addition, she explained that the actions by the Department of Public Safety following the incident, including the employees' actions in preventing her from filing a complaint and repeatedly providing her with false information, caused her emotional distress and harm over the period of years.  (Id. at pp. 82, 88, 116).  There was evidence that Plaintiff had been diagnosed with various mental health conditions and sought treatment in 2018 and 2019 related to the July 3, 2014 strip search.  (Trial Transcript Day 6 at p. 12, ECF No. 529).

**Criminal Complaint**

The jury heard evidence that on July 3, 2017, Sergeant Allan Octavio finally provided Plaintiff with the results of the investigation, three years to the day that Plaintiff was strip searched by Carabbacan on July 3, 2014.  (Trial Transcript Day 2 at p. 87, ECF No. 545).

Plaintiff's counsel introduced evidence that there was a three year statute of limitations for sexual assault in the third degree.  Plaintiff argued that the Department of Public Safety hindered Plaintiff from seeking criminal charges against Carabbacan by not giving her the substantiation of her complaint until the exact deadline that the criminal statute of limitations had passed.  (Id. at p. 96-98).  Plaintiff testified that she believed the Department of Public Safety was "protecting [Carabbacan]," explaining, "I find it peculiar that my

13

documentation was held back for three years to the date for criminal prosecution.  I find it peculiar that every time I went to [Oahu Community Correctional Center] that they always told me that my investigation was pending [when it was not]."  (Id. at p. 117).

### b. The Jury Verdict Is Consistent With The Clear Weight Of The Evidence And The Jury Instructions

Defendant's only argument regarding the sufficiency of the evidence is that Plaintiff Mueller did not describe in enough detail the harm she suffered as a result of the State of Hawaii Department of Public Safety's actions.

Defendant's argument is unpersuasive.  The Court must review the consistency of the jury's verdict in the light of the instructions given.  Grosvenor Properties, Ltd. v. Southmark Corp., 896 F.2d 1149, 1151 (9th Cir. 1990).  Here, the Parties agreed to the jury instructions on damages, as follows:

### Court's Instruction No. 30

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Plaintiff as to a claim, you must determine Plaintiff's damages.  Plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by a Defendant.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not

14

upon speculation, guesswork, or conjecture.

(Jury Instruction No. 30, ECF No. 508 at p. 37).

### Court's Instruction No. 31

In determining the measure of damages, you should consider the nature and extent of her injuries and/or the mental and emotional pain and suffering experienced.

(Jury Instruction No. 31, ECF No. 508 at p. 38).

### Court's Instruction No. 32

General damages are those damages which fairly and adequately compensate Plaintiff for any past, present, and reasonably probable future disability, pain, and/or emotional distress caused by the injuries or damages sustained.

(Jury Instruction No. 32, ECF No. 508 at p. 39).

### Court's Instruction No. 33

Plaintiff is not required to present evidence of the monetary value of her pain or emotional distress. It is only necessary that Plaintiff prove the nature, extent and effect of her injury, pain, and/or emotional distress. It is for you, the jury, to determine monetary value of such pain and/or emotional distress using your own judgment, common sense, and experience.

(Jury Instruction No. 33, ECF No. 508 at p. 40).

Defendant State of Hawaii did not object to the damages jury instructions. (Minutes from Status Conference on November 10, 2021, ECF No. 504).

The verdict demonstrates that the jury credited Plaintiff's testimony as to the extent of her injury, pain, and emotional distress caused by the State. The jury applied judgment, common sense, and experience to determine the monetary value for each of the causes of action for which Plaintiff prevailed against the

15

State.  (Special Verdict Form, ECF No. 507).

The Hawaii Supreme Court has set forth the test for evaluating whether a jury's award of damages is excessive, as follows:

> [A] finding of an amount of damages is so much within the exclusive province of the jury that it will not be disturbed on appellate review unless palpably not supported by the evidence, or so excessive and outrageous when considered with the circumstances of the case as to demonstrate that the jury in assessing damages acted against rules of law or suffered their passions or prejudices to mislead them.

Quedding v. Arisumi Bros., Inc., 661 P.2d 706, 709-10 (Haw. 1983) (quoting Vasconcellos v. Juarez, 37 Haw. 364, 366 (Haw. Terr. 1946)).

Here, a review of the record demonstrates that the jury verdict was not outrageous when considered within the circumstances of the case.

There was ample evidence that the State failed to supervise Defendant Carabbacan and that it affirmatively knew that he was conducting strip searches of females in custody prior to the July 3, 2014 strip search of Plaintiff.  Lieutenant Ching testified at length about his role as the supervisor of Carabbacan, and he explained that he put Carabbacan back on duty and permitted him to conduct strip searches of females in custody two days before Carabbacan searched Plaintiff Mueller on July 3, 2014.

There was sufficient evidence at trial for the jury to find that the State's actions and its failures to act caused Plaintiff's harm and emotional distress.

Contrary to the State's position, the harm in this case was not limited to the harm caused by Defendant Carabbacan on July 3, 2014.  The jury awarded general damages to Plaintiff for her claims against the State of Hawaii Department of Public Safety and the scope of the general damages award is not as narrow as the State argues.  "General damages encompass all the damages which naturally and necessarily result from a legal wrong done, ... and include such items as pain and suffering, inconvenience, and loss of enjoyment which cannot be measured definitively in monetary terms."  Kanahele v. Han, 263 P.3d 726, 731 n.8 (Haw. 2011) (quoting Bynum v. Magno, 101 P.3d 1149, 1153 (Haw. 2004)).

There was evidence that Plaintiff suffered harm following the July 3, 2014 incident.  Plaintiff introduced evidence that the State's procedures relating to the Prison Rape Elimination Act were not properly followed with respect to her complaint regarding the July 3, 2014 incident.  There was evidence that Department of Public Safety employees contributed to Plaintiff's emotional distress following the incident by preventing her from filing police reports, by providing her with incorrect information, and by delaying the investigation.  Plaintiff testified that the actions by the Department of Public Safety caused her to mistrust authority and caused her to have continued fear of law enforcement.

It is not for the Court to alter the credibility determinations of the jury or to substitute its own opinions as to the value of Plaintiff's pain or emotional distress.  Johnson

17

v. Sartain, 375 P.2d 229, 231 (Haw. 1962); see Union Oil Co. of Cal., 331 F.3d at 743.

A court only reverses a "jury's finding of the amount of damages if the amount is grossly excessive or monstrous." Lambert v. Ackerley, 180 F.3d 997, 1011 (9th Cir. 1999) (en banc). The jury's verdict in this case is not "so grossly excessive as to shock the moral sense." Trask v. Kam, 352 P.2d 320, 325 (Haw. 1959).

Contrary to the State's position, there was sufficient evidence for the jury to award the damages it found in the Special Verdict Form. The jury was permitted to assess damages based solely on the Plaintiff's testimony. (Jury Instruction No. 33, ECF No. 508 at p. 40); Peake v. Labatad, 501 P.3d 332, *5 (Haw. App. 2021) (explaining that under Hawaii law, a plaintiff's testimony about her own pain and suffering is sufficient to support a damages award); see Zhang, 339 F.3d at 1040 (upholding a jury's award of emotional distress damages based on the plaintiff's testimony alone); see also Passantino, 212 F.3d at 513.

The Hawaii Supreme Court has ruled that pain and suffering is measured by what the trier of fact considers will reasonably compensate the plaintiff in light of the intensity and extent to which she suffered. Barretto v. Akau, 463 P.2d 917, 923 (Haw. 1969). Pain and suffering can be based on the plaintiff's testimony alone, and nothing in the record demonstrates that the jury's verdict was outrageous or impermissibly excessive.

**2.   The Jury Verdict Was Not Duplicative Or Inconsistent**

The trial court must "search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to dismiss the jury's verdict." Carr v. Strode, 904 P.2d 489, 503 (Haw. 1995) (quoting Toner v. Lederle Labs., 828 F.2d 510, 512 (9th Cir. 1987)).

Here, the Special Verdict Form properly separated the damages for each specific cause of action to avoid duplication and inconsistency.  Defendant State of Hawaii agreed to the use of the Special Verdict Form before it was provided to the jury. (Minutes From November 10, 2021 Status Conference, ECF No. 504). There is nothing duplicative or inconsistent in the way damages are awarded on the Special Verdict Form.  Negligence and NIED claims are not duplicitous of a respondeat superior claim.  Doe Parents No. 1 v. State, Dept. of Educ., 58 P.3d 545, 578 (Haw. 2002).

The State argues that the jury's award of damages in this case is duplicitous because the State believes the damages in this case are limited to emotional distress caused on July 3, 2014 by the conduct of Defendant Carabbacan.  Again, the State ignores the numerous harms caused to Plaintiff, the scope of general damages pursuant to Hawaii law, and the duration and severity of the harm caused to Plaintiff due to the State's numerous and separate failures.  Kanahele, 263 P.3d at 731 n.8. As Plaintiff explains in her Opposition:

19

The State continues to minimize Plaintiff's injury and ignores its culpability in creating the danger[ous] situation that it placed Plaintiff in....[T]he injury also included the damage resulting from its failure to properly administer the federal Prison Rape Elimination Act, DPS employees' actions preventing Plaintiff from filing a complaint against Carabbacan the day the strip search occurred, DPS's mishandling of the subsequent investigation into her complaint, and DPS employees' actions in preventing Plaintiff from pursuing criminal charges against Defendant Carabbacan.

(Pl.'s Opposition at p. 7, ECF No. 526).

The findings of the jury are neither inconsistent with a determination of liability nor legally irreconcilable with each other or with a subsidiary legal conclusion. Carr, 904 P.2d at 503.

### 3. There Is No Evidence To Support Defendant's Theory That The Jury Verdict Was Punitive

#### a. There Is No Basis To Find The Jury Intended The Damages Award To Be Punitive

The Parties agreed to the Jury Instructions and the Special Verdict Form before they were given to the jury.  The Jury Instructions and the Special Verdict Form explained the basis by which punitive damages could be awarded in this case.  It was clear from both the Jury Instructions and the Special Verdict Form that punitive damages were only available against Defendant Carabbacan and Defendant Espinda.  The Jury Instructions specifically explained to the jury that punitive damages may not be awarded against the Defendant State of Hawaii Department of Public Safety.  (Jury Instruction No. 35, ECF No. 508 at p. 43, explaining "Punitive damages may not be awarded against the

Department of Public Safety"; see Special Verdict Form, ECF No. 507).

No punitive damages were awarded against the Defendant State of Hawaii on the Special Verdict Form as they were not available as a matter of law.  (Id.)

The State speculates that the jury award against the State was intended to be punitive.  There is no evidence to support the State's theory.  There is no basis to find that the jury's verdict against the Defendant State of Hawaii is punitive other than the State's own conjecture and speculation.

> ### b.    Statements Made By Plaintiff's Counsel Do Not Provide A Basis For Ordering A New Trial

The State also argues that the verdict was improperly based on statements made by Plaintiff's counsel during closing argument.

First, the State did not object to the statements made by Plaintiff's counsel during closing and is simply cherry-picking arguments without the context of the entirety of the trial and the arguments themselves.

Second, Plaintiff's counsel made permissible arguments about the State's repeated failures to oversee the safety of female inmates, failures to supervise Carabbacan, failures to train its staff, failures to maintain records, and failures to properly administer the Prison Rape Elimination Act.  The arguments go toward the serious nature of Plaintiff's harm and the scope of

general damages available pursuant to Hawaii law.

The State's reliance on caselaw about impermissible arguments made by prosecutors in criminal trials is misplaced. The standard for evaluating prejudice for attorney misconduct in a civil case is different from that of a criminal case. Compare Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1286 (9th Cir. 1984) and United States v. Hermanek, 289 F.3d 1076, 1098-99 (9th Cir. 2002).

In a civil case, the Court considers the totality of the circumstances, including the nature of counsel's comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1193 (9th Cir. 2002).

Here, the remarks made by Plaintiff's counsel at closing do not provide a basis for a new trial. Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1107 (9th Cir. 1991) (declining to find reversible error where the alleged misconduct occurred only in the argument phase of the trial, the remarks were isolated rather than persistent, most of counsel's comments were not objected to at trial, and the opposing party did not move for a mistrial at the end of argument).

The State argues that Plaintiff's counsel violated the "Golden Rule" during his closing argument. The Golden Rule, to which the State refers, is used primarily in the context of a criminal trial where a prosecutor asks a juror to think of

22

themselves in the place of the victim when adjudicating guilt. Drayden v. White, 232 F.3d 704, 712-13 (9th Cir. 2000).

Plaintiff's counsel made statements about the context of Plaintiff Mueller being detained in a prison cell when the strip search occurred and asked the jurors to imagine the situation to understand her perspective and testimony.

As explained in Howard v. Connett, 2017 WL 4682300, *3 (D. Nev. 2017), such arguments in the context of a Section 1983 claim, such as here, are not improper. The court in Howard explained:

> [T]he argument appears to merely have pointed out to the jury that the prison setting is **different** than a real world setting in the context of the disputes at issue. This is not an empathy or sympathy argument, rather it is a factual argument about the nature of the circumstances in which the disputed acts occurred. In the context of the entire closing argument by Plaintiff, the Court understood this reference to be asking the jury to remember the prison setting and not rely just upon their common sense applied to a non-prison setting.

Id.

In addition, the State ignores that there were other Defendants at this trial for which punitive damages were available. Punitive damages were available against Defendant Nolan Espinda who was represented by counsel for the State at trial. Statements requesting the jury send a message to Espinda and asking the jury to punish him to deter other Directors of the Department of Public Safety are not improper. See Settlegoode v. Portland Public Schools, 371 F.3d 503, 519 (9th Cir. 2004) (explaining that "reminding the jury that they have the capacity

to deter defendants and others similarly situated is certainly legitimate where punitive damages are at stake").

Defendant's reliance on the Golden Rule argument also fails as a matter of law because alleged offending remarks that are limited to an opening statement and a closing argument, rather than throughout the course of trial, do not provide a basis for a new trial.  Settlegoode, 371 F.3d at 518.

Third, the State misconstrues counsel's argument regarding the Department of Public Safety's budget.  The annual budget was admitted to counter the State's argument that it did not have sufficient funds to hire a female sheriff for the cellblock, which was given as an explanation as to why Carabbacan was permitted to search females in custody instead of a female sheriff.  The budget was not admitted for an improper purpose nor was it used by Plaintiff for any purposes relating to punitive damages.

Fourth, there is no evidence that the jury's verdict was driven by sympathy or was based on improper bias, prejudice, or passion.  This is particularly evident because there was a split verdict in this case.  The jury did not find liability nor award damages against Defendant Espinda.  The verdict reflects the jury's ability to compartmentalize the evidence and follow the court's instructions.  See United States v. Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir. 1994).

The jury made differing, independent findings as to each Defendant and as to each claim.  The Court cannot conclude that

the verdict is outrageous, shocks the conscience, or is against
the clear weight of the evidence.  Vasconcellos, 37 Haw. at 366;
Trask, 352 P.2d at 325; Molski, 481 F.3d at 729.

## III. Defendant State Of Hawaii Has Not Substantively Challenged The Fairness Of The Trial

In its Rule 59 Motion, Defendant State of Hawaii argues that
the trial was unfair to it.  The State does not argue that the
trial was unfair to Defendant Nolan Espinda for which the jury
found no liability.  The State does not explain why it believes
the State received an unfair trial, but Defendant Espinda, whom
the same attorneys also represented, received a fair trial.  The
State does not address on what basis the Court could order a new
trial just for the State and not against Defendant Espinda for
whom counsel does not seek a new trial.

There are no substantive challenges to the trial in the
Motion.  Rather, Defendant State of Hawaii lists rulings made
against it and argues that the rulings resulted in an unfair
trial against the State only.  (Def.'s Motion for New Trial at p.
25, ECF No. 514-1).

The State has not provided any legal analysis, factual
basis, or substantive allegations upon which the Court could find
that the State did not obtain a fair trial.

The Court cannot substantively evaluate the State's argument
that the trial was unfair without a meaningful challenge.  The
Court explained the legal basis for all of its rulings and issued

written orders setting forth the Court's analysis.  The State's Rule 59 Motion simply listing the rulings held against it fails to present any argument about fundamental unfairness for the Court to evaluate.

The record reflects that each of the Defendants, including the State, was provided a full and fair opportunity to be heard at trial.  The jury ruled against the Defendant State of Hawaii and Defendant Carabbacan, but not against Defendant Espinda.  The State may raise its arguments on appeal as to the rulings made against it if it chooses to do so.

The fact that a judge has made rulings adverse to a party is not a basis for a new trial for fundamental unfairness.  See Liteky v. United States, 510 U.S. 540, 555 (1994).  The State has not presented this Court with any substantive reason for the Court to overturn the jury's verdict or to order a new trial based on purported unfairness.

//

//

//

//

//

//

//

//

//

## CONCLUSION

Defendant State of Hawaii Department of Public Safety's Motion for a New Trial Under Rule 59(a) and/or Remittitur and Relief Under Rule 59(e) (ECF No. 514) is **DENIED**.

DATED: Honolulu, Hawaii, March 31, 2022.

IT IS SO ORDERED.

Helen Gillmor
United States District Judge

Elizabeth A. Mueller v. State of Hawaii, Department of Public Safety; Freddie Carabbacan; Nolan Espinda; Civ. No. 17-00571 HG-WRP; **ORDER DENYING DEFENDANT STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR A NEW TRIAL UNDER RULE 59(a) AND/OR REMITTITUR AND RELIEF UNDER RULE 59(e) (ECF No. 514)**